STARK, ROSENTHAL & STARK v. SOLOMON et al.

(Supreme Court, Appellate Term. January 7, 1909.)

1. PRINCIPAL AND AGENT (§ 23*)—PROOF OF AGENCY.

Evidence in an action for goods sold, plaintiff claiming they were sold to defendants through S., defendants' employé, and defendants claiming that S. bought them for himself, *held* insufficient to show S.'s agency.

[Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 23.*]

2. EVIDENCE (§ 262*)—ADMISSION—SENDING AND RETENTION OF STATEMENT.

Evidence, in an action for goods sold, defendants claiming they were sold not to them, but to their employé personally, as to the sending to and retention by defendants of a statement for the goods, *held* too indefinite to make out an admission of liability by defendants.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 262.*]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by Stark, Rosenthal & Stark against Moe Solomon and others. From a judgment for plaintiff, defendants appeal. Reversed, and new trial ordered.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before GILDERSLEEVE, P. J., and BISCHOFF and GUY, JJ.

Emanuel Klein, for appellants.

Bandler & Haas, for respondent.

PER CURIAM. The pleadings are oral. The complaint is: "Goods sold and delivered." The answer is: "General denial. Demand for bill of particulars." The bill of particulars sets forth a claim for $15.20 for goods sold and delivered, and of which claim the items are as follows:

| | |
|---|---:|
| 1 end cloth | $ 4 20 |
| 8 yds. cloth | 11 00 |
| Total | $15 20 |

The justice gave judgment for the plaintiff, and defendants appeal.

The plaintiff is a corporation and the assignee of the claim in suit. It appears that one David Solomon, a brother of Moe Solomon, one of the defendants herein, went to the store of the firm of Stark, Rosenthal & Stark, plaintiff's assignor, and got the goods in suit. The defendants compose the firm of Solomon, Hodes & Zeeman, of which firm the said David Solomon is an employé, and plaintiff's assignor charged the goods so taken by David Solomon against the account of the firm of Solomon, Hodes & Zeeman. The said David Solomon is the only witness for defendants; and he swears he bought the goods for his wife, and not for the firm of Solomon, Hodes & Zeeman. He says he told Rosenthal, the member of the firm of Stark, Rosenthal & Stark who sold the goods in question, that he wanted the goods for his wife. Rosenthal was not called as a witness, and the plaintiff's only witnesses are its vice president, one Stark, and its bookkeeper, a girl named Ida Smolinsky. Stark states that he was a member of the firm of Stark, Rosenthal & Stark, plaintiff's assignors, and that on March 19, 1908, said David Solomon called at the store of the said firm and got the goods in suit. Stark testifies thus:

"Q. Did you sell the goods? A. My partner did.

"Q. In your presence? A. In my place. I was present at the time he, David Solomon, came in, and I turned him over to Mr. Rosenthal.

"Q. To whom were those goods sold? A. To Solomon, Hodes & Zeeman.

"Q. Who bought those goods? A. Mr. Solomon.

"Q. Were the goods delivered to Mr. Solomon? A. Yes, sir; and the bill was charged to Solomon, Hodes & Zeeman.

"Q. Were statements sent to Solomon, Hodes & Zeeman? A. Yes, sir.

"Q. Where were the goods delivered? A. In our place. Mr. Solomon took them along."

On cross-examination he identified David Solomon as the man to whom the goods were delivered, and testifies thus:

"Q. He [David Solomon] was the man that received those goods? A. He was there to ask for the goods.

"Q. And he is the man that had the conversation with Mr. Rosenthal, which you testify occurred that day? A. Yes; he came into my place and asked—he wanted to get some goods for himself.

"Q. That is the man (indicating David Solomon)? A. Yes.

"Q. And no one else? A. That is all I saw."

What conversation Solomon had with Rosenthal does not appear from Stark's testimony. The plaintiff then rested without having shown any authority actual or implied on the part of David Solomon to buy for the firm of Solomon, Hodes & Zeeman, nor even that, in point of fact, said Solomon pretended that he was buying for said firm. David Solomon was then called on defendants' behalf, and testified, as above indicated, that he bought for his wife only, and so told Rosenthal, and that he never pretended that he was buying for the firm of his brother, the defendants herein, and he says he never bought goods for the defendants. He further claims that Rosenthal owed him $13.88, and that he bought the goods from Rosenthal for $15.20, leaving him in debt to Rosenthal for $1.32. He also states that the goods in question were never turned over to defendants, but that the goods were delivered to the wife of the witness. Plaintiff then called its bookkeeper, Ida Smolinsky, who says that Rosenthal told her to charge the goods to the firm of Solomon, Hodes & Zeeman, and to deliver them to said David Solomon. She then testifies thus:

"Q. Did you send a statement as ordered? A. Yes, sir."

Presumably she means that she sent the statement to Solomon, Hodes & Zeeman, although she does not so state.

"Q. Have you ever received a check from Solomon, Hodes & Zeeman for those goods? A. No, sir.

"Q. By the Court: Did you ever send a statement to Solomon, Hodes & Zeeman for this bill of goods? A. Yes, sir.

"Q. Did you ever have it questioned? A. No.

"Q. No reply ever came to you when a statement was sent? A. No, sir.

"Q. Of any kind? A. Except that a check that I got in August.

"Q. No, I mean for this bill of $15.20. Did you ever receive any word on that account? A. No, sir.

"Q. Was that statement at any time returned to you by Solomon, Hodes & Zeeman? A. No, sir."

When or how she sent the statement, or whether it was ever received by defendants, or whether it might not have been returned to plaintiff without her knowledge, her direct testimony fails to disclose. Upon cross-examination, however, she testifies: That she sent the statement or bill about two days after the goods were bought, and that it was mailed from her place.

"Q. Did you mail it personally? A. I mail all the mail.

"Q. Do you remember particularly the day that you mailed that letter? A. I mailed it with the rest of my mail, together with everything else.

"Q. Do you remember particularly whether you dropped that letter in the letter box? A. No, sir.

"Q. All you know is that you had a pile of letters, and took them down, and mailed whatever you had? A. Yes, sir."

She is unable to fix the month when the goods were sold and the statement sent. Stark swore the goods were sold in March, and the bill of particulars gives the date as March 19, 1908. Ida Smolinsky is asked:

"Q. Are you sure it was not in March? A. Yes, sir; and it was not in April.

"Q. You say it was in the latter part of May or early part of June. Are you pretty sure of that? A. Yes, sir."

It seems to us that the evidence as to the agency of Solomon does not support the judgment, while the evidence as to the sending and retention of the statement is too indefinite to make out an admission of liability by defendants.

Judgment reversed, and new trial ordered, with costs to appellants to abide the event.